# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER S. BURCH,** | * | CIVIL ACTION |
| **Plaintiff,** | * | |
| | * | NO. |
| **VERSUS** | * | |
| | * | JUDGE |
| **KLS MARTIN, LP,** | * | |
| **Defendant.** | * | MAGISTRATE JUDGE |

**************************************

## COMPLAINT FOR DAMAGES

**NOW INTO COURT**, through undersigned Counsel, comes Christopher S. Burch who for his Complaint for Damages represents as follows:

### I. PARTIES

1. Christopher S. Burch ("Plaintiff") is an adult resident citizen of the State of Texas.

2. Defendant KLS Martin, LP ("KLS" or "Defendant") is a limited partnership composed of a general partner (KLS Martin, Inc.) and limited partner (KLS Martin International Holding, GmbH). KLS Martin, Inc. is a Delaware corporation with its principal place of business located in Jacksonville, Florida. KLS Martin International Holding, GmbH is a German limited liability company (known as a "Gesellschaft mit beschränkteer Haftung" under German law) with its principal place of business located in Germany.

3. Pursuant 28 U.S.C. § 1332(c)(1), KLS Martin, LP is a citizen of Florida, Delaware, and Germany. Therefore it is completely diverse in citizenship from the Plaintiff.

### II. FEDERAL SUBJECT MATTER JURISDICTION

4. This Honorable Court has jurisdiction over this case on the basis of diversity of citizenship under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the

sum or value of $75,000 exclusive of interest and costs, and is between citizens of different states.

### III.  PERSONAL JURISDICTION OVER THE DEFENDANT

5. KLS Martin, LP engages in business and commerce within the Northern District of Texas and the Wichita Falls Division, and is subject to the general personal jurisdiction and/or the specific personal jurisdiction of this Honorable Court, and has been or will be served with Summons and a copy of the instant Complaint for Damages in accordance with Fed. R. Civ. P. 4(h)(1).

### IV.  VENUE

6. Venue is appropriate in this Honorable Court pursuant to 28 U.S.C. § 1391(2)(b), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.

### V.  FACTS

7. At all times relevant to this matter, KLS has conducted substantial business in the State of Texas and had numerous contacts with the Northern District of Texas related to the subject matter of this action.

8. KLS, either directly or through its agents, apparent agents, servants or employees, designed, manufactured, marketed, advertised, distributed and sold rib plates and associated fixation hardware, including bone screws used to affix the rib plates, within the State of Texas and within this judicial district.

9. KLS, which is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce, is a

"manufacturer" within the meaning of the Texas Civil Practice and Remedies Code, Sec. 82.001 (4).

10. KLS, which at all times relevant was engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption rib plates and associated fixation hardware, was also or in the alternative a "seller" within the meaning of the Texas Civil Practice and Remedies Code, Sec. 82.001 (3).

11. March 4, 2019, at United Regional Health Care Center in Wichita Falls, Texas, surgeon Shafi Mohamed, M.D., performed on Plaintiff a right-side thoracotomy with plating at ribs nine and ten.

12. At that time, the following KLS medical devices were implanted into Plaintiff:

    A.    Level One Thoracic Rib Plate
            Size 2.0 MM
            Lot # 33276444
            Mfg Catalogue # 24-015-26-71
            Quantity: 1

    B.    Locking Rib Screws
            Size 2.3 X 7 MM
            Lot # 33277517
            Mfg Catalogue # 24-016-07-74
            Quantity: 14

    C.    Locking Rib Screws
            Size 2.3 X 7 MM
            Lot # 33277517
            Mfg Catalogue # 24-016-07-74
            Quantity: 23

    D.    Level One Thoracic Rib Plate
            Size7.0 MM
            Lot # 33277172
            Mfg Catalogue # 24-016-26-71
            Quantity: 1

13. During June 2019, while sneezing, Plaintiff heard a "popping" sound.

14. On or about August 7, 2019, a CT scan revealed fracture of the plate involving the 9th rib with evidence of a new fracture on the right-sided 10th rib near the angle with the plate ends.

15. During subsequent surgery on August 7, 2019, it was discovered that Plaintiff had a non-union which spanned 1 CM of the 9th rib because the KLS rib plate had broken at the non-union site.

16. The KLS bone screws and broken KLS rib plate were thereafter removed and replaced.

17. KLS, as the manufacturer and/or seller of the rib plate implanted into Plaintiff on March 4, 2019, is liable to Plaintiff for the damages proximately caused by a characteristic of the product that rendered it unreasonably dangerous, as such danger arose from a reasonable anticipated use of the product by the Plaintiff or another person or entity.

18. Plaintiff has suffered and continues to suffer damages as a result of the KLS rib plate failing and breaking, including but not limited to physical injury, disability, medical expenses, pain and suffering, mental anguish and distress, lost wages, and loss of enjoyment of life, and is now more vulnerable to the increased likelihood of future complications.

## VI.  CLAIMS ASSERTED

### COUNT I - DESIGN DEFECT

19. Plaintiff repeats and re-alleges all of the above paragraphs and all subsequent paragraphs as if each were set forth herein verbatim.

20. The KLS rib plate was defective before it left KLS' control because the foreseeable risks associated with the design exceeded the benefits of that rib plate's design.

21. The KLS rib plate product was more dangerous than an ordinary consumer would expect when it is used in an intended or reasonably foreseeable manner.

22. There was a safer alternative design which:

    A. Would have prevented or significantly reduced the risk of the Plaintiff's personal injury without substantially impairing the product's utility; and

    B. Was economically and technologically feasible at the time the product left the KLS' control by the application of existing or reasonably achievable scientific knowledge.

23. The defect was a direct and proximate producing cause of the personal injury for which Plaintiff seeks recovery.

## COUNT TWO - FAILURE TO WARN

24. Plaintiff repeats and re-alleges all of the above paragraphs and all subsequent paragraphs as if each were set forth herein verbatim.

25. Additionally or alternatively, KLS failed to provide proper warning and/or instructions to Plaintiff and his treating surgeon that its rib plate could and would fracture as a result of Plaintiff sneezing, a well-known, commonplace, and everyday occurrence.

26. Because this sneezing-related fracture hazard was unexpected or unforeseeable, KLS was required to provide a warning label or warning statement but failed to do so.

27. KLS' failure to warn was a direct and proximate producing cause of the personal injury for which Plaintiff seeks recovery.

## COUNT THREE - MANUFACTURING DEFECT

28. Plaintiff repeats and re-alleges all of the above paragraphs and all subsequent paragraphs as if each were set forth herein verbatim.

29. Additionally or alternatively, the KLS rib plate which fractured was defective before it left KLS' control because it possessed of a manufacturing defect.

30. This manufacturing defect was a direct and proximate producing cause of the personal injury for which Plaintiff seeks recovery.

## COUNT FOUR - BREACH OF EXPRESS WARRANTY

31. Plaintiff repeats and re-alleges all of the above paragraphs and all subsequent paragraphs as if each were set forth herein verbatim.

32. In marketing the product at issue, KLS represented and warranted that it would assist in healing a broken rib and that it was adequate for that purpose, thereby creating an express warranty.

33. This express warranty induced Plaintiff and his physician to use the product at issue.

34. The hardware implanted into Plaintiff was unreasonably dangerous because it did not conform to an express warranty made at the time by KLS about the product.

35. The product failed to perform as warranted.

36. The express warranty was untrue.

37. This breach of an express warranty was a direct and proximate producing cause of the personal injury for which Plaintiff seeks recovery.

## COUNT FIVE - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS

38. Plaintiff repeats and re-alleges all of the above paragraphs and all subsequent paragraphs as if each were set forth herein verbatim.

39. KLS designed, developed, tested, promoted, marketed, labeled, manufactured, distributed, and/or sold the rib plate that was implanted in Plaintiff.

40. KLS represented and warranted to the users of its rib plates and their physicians, healthcare providers, and/or the FDA that its rib plates were safe and merchantable quality and fit for the ordinary purpose for which said products were used.

41. At all relevant times, KLS knew of the use for which its rib plates were intended and impliedly warranted these products to be of merchantable quality and safe for such use.

42. KLS was aware that consumers, including Plaintiff, would use its rib plates in the manner intended.

43. Plaintiff, his physicians, and the medical community reasonably relied upon the judgment and sensibility of KLS to sell its rib plates only if the products were indeed of merchantable quality and safe for their intended use.

44. KLS breached the implied warranty to consumers, including Plaintiff, as the rib plate implanted in Plaintiff was not of merchantable quality and was not safe and fit for its intended use.

45. Consumers, including Plaintiff, and the medical community, reasonably relied upon KLS' implied warranty for its rib plate implant product.

46. The rib plate product reached consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by KLS.

47. The aforementioned representations and warranties were false, misleading, and inaccurate in that the rib plate product was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

48. KLS' rib plates were placed into the stream of commerce by KLS in a defective, unsafe, and inherently dangerous condition and the product was expected to and did reach users without substantial change in the condition in which the rib plates were sold.

49. KLS breached the aforesaid implied warranties, as their rib plate devices were not fit for their intended purposes or uses and the defect existed at the time the product left the hands of KLS.

50. As a direct and proximate result of KLS's breach of implied warranty, Plaintiff has suffered damages, including, but not limited to, personal injury, physical pain and suffering, mental anguish, medical expenses, surgical costs of removal of the products, loss of enjoyment of life, lost wages, and ongoing medical monitoring costs.

## VII.  PLAINTIFFS' DAMAGES:

51. Christopher S. Burch itemizes his general and special damages as follows:

    A. Past and future mental anguish;

    B. Past and future physical pain and suffering;

    C. Loss of enjoyment of life;

    E. Past and future medical expenses; and

    F. Loss of income.

## VIII.  LIABILITY ALLEGATIONS:

52. For reason of the acts of fault, want of care, and/or negligence on the part of Defendant, which were a direct and proximate causes of Plaintiffs' injury, the Defendant is directly and vicariously liable to Plaintiff in money damages exceeding the sum or value of $75,000.00 exclusive of interest and costs.

## IX.  JURY TRIAL DEMAND

53. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues of fact and law triable to a jury.

## X.  PRAYER FOR RELIEF:

54. **WHEREFORE**, Plaintiff, Christopher S. Burch, prays:

   A.   That KLS Martin, LP be served with copies of Summons and the Complaint;

   B.   That KLS Martin, LP serve its Answer thereto;

   C.   That after all due proceedings had, there be a final Judgment holding KLS Martin, LP liable to the Plaintiff in money damages reasonable under these premises and exceeding the sum or value of $75,000.00 exclusive of interest and costs;

   D.   That there be an award of legal interest from the date of judicial demand until all damages awarded are fully paid;

   E.   That there be an award of all costs allowed by Fed. R. Civ. P. 54(b) and 28 U.S.C. § 1920;

   F.   That there be trial by jury on all issues of fact and law triable to a jury; and

   G.   That the Court grant such other relief as the interests of justice may require.

        Respectfully submitted,

        */s/ Richard M. Martin*, Jr.
        RICHARD M. MARTIN, JR., T.A.
        TX Bar #24026021
        LAMOTHE LAW FIRM, LLC
        400 Poydras Street, Suite 1760
        New Orleans, LA 70130
        Telephone: (504) 704-1414
        E-Mail  rmartin@lamothefirm.com